Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
Defendants have moved the Industrial Commission for an award of attorney fees against plaintiff for bringing and prosecuting the claim without reasonable grounds under N.C. Gen. Stat. § 97-88.1. The Commission rarely makes such an award of attorney fees because to do so in every case in which a Deputy Commissioner does not find a plaintiff credible would be unreasonable. However, the Full Commission in its discretion believes that the particular circumstances in this case warrant such an award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. State Farm Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The issues for determination are:
 a. Whether the plaintiff sustained an injury by accident arising out of and in the course and scope of his employment on December 19, 1996, and if so, to what benefits is he entitled under the Act?
 b. Whether the defendants are entitled to an assessment of attorney's fees pursuant to N.C. GEN. STAT. § 97-88.1?
5. At the hearing, the following exhibits were stipulated into the record:
a. Exhibit 1 — forty pages of medical reports,
 b. Exhibit 2 — Defendants' Response to Interrogatories, eleven pages,
 c. Exhibit 3 — Plaintiff's Response to Interrogatories, nine pages,
 d. Exhibit 4 — Plaintiff's Recorded Statement, thirty-three pages,
 e. Exhibit 5 — Photos of the work site, seven pages,
 f. Exhibit 6 — Recorded Statements of David Jones, thirteen pages,
 g. Exhibit 7 — Recorded Statements of Jeffrey Hoy, twenty-one pages,
 h. Exhibit 8 — Recorded Statement of Barbara Blandine, seven pages, and
 i. Exhibit 9 — Recorded Statement of Max Benton, Jr., nineteen pages.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a twenty-four year old, ninth grade educated male, who obtained his diploma in trade school where he trained to be a residential and industrial painter. The plaintiff had pre-existing neck and back problems due to motor vehicle accidents in 1991, 1992, and 1995, for which he had received ongoing medical care and had ongoing symptoms of discomfort.
2. On December 19, 1996, the plaintiff had been employed as a painter with the defendant-employer for eleven months. His duties included mixing paint and using a paint brush and roller to paint in industrial settings. The defendant-employer was engaged in a painting job at the Corning Fiberglass Plant in Wilmington, North Carolina.
3. The plaintiff did not work his entire shift on Monday, December 16, 1996, due to complaints of low back and neck pain.
4. At the hearing, the plaintiff testified that he was in the breakroom when Neil Benton asked him why he was not working. The plaintiff contends that he had not been working because he had forgotten his safety harnesses. However, the plaintiff then testified that he left the breakroom, got his harness, and began to work. He testified that after painting an area, he attempted to hook off his harness when he slipped on a wet beam, dropped his paint brush, and fell a distance of six to eight feet, landing on the concrete floor. The plaintiff further testified that he hurt his neck, low back, pelvis, and left arm in the fall. This testimony is not accepted as credible.
5. On December 19, 1996, the plaintiff was working with Jeff Hoy and David James, and neither man heard or saw the plaintiff's alleged fall. No moisture was observed on the beams in the work area by either man. Recorded statements from the two co-workers taken shortly after the alleged incident further support this testimony.
6. Barbara Blandine, a Chemical Technology Documentation Technician employed at Corning, was the in-house first responder, and was called to the area after plaintiff's alleged fall. She found the plaintiff lying on the floor. However, she did not see any paint spills in the area, and observed that the plaintiff's paint brush was laying on top of the paint can which was still on the beam. There was no moisture, water, or spilled paint in the area where plaintiff had been working. Ms. Blandine's recorded statement taken shortly after the alleged incident further supports this testimony.
7. Paramedics called to the scene noted that the plaintiff reported twisting around to explain how he had landed on his left side.
8. Max O'Neil Benton, Jr., the supervisor referred to as "Neil" by the work crew, was paged by a Corning employee, and he arrived on the scene shortly after the paramedics. Mr. Benton observed the paint can and brush were still on the beam where plaintiff had been working, and there was no spilled paint in the area. Mr. Benton rode with the plaintiff to the hospital. His recorded statement corroborates his hearing testimony.
9. At New Hanover Regional Medical Center, the plaintiff was examined by Dr. Nix for complaints of severe pain in the posterior chest, back, left shoulder and abdomen. An examination revealed no focal weakness in the extremities and no acute distress, although the plaintiff winced and complained of pain upon palpation anywhere on the back. No hematoma, ecchymoses, or abrasions were observed on the plaintiff. Dr. Nix conferred with Dr. Maxwell due to plaintiff's pain complaints; and numerous diagnostic studies of the brain, abdomen, spine, shoulder, pelvis, chest, and carotid arteries of the neck were ordered. All testing was reported as negative.
10. Dr. Maxwell found the plaintiff's complaints to be out of proportion to the objective findings; however, the plaintiff was hospitalized overnight for observation. The plaintiff was released without restrictions on December 20, 1996, and was instructed to return for a follow-up visit on January 3, 1997.
11. The plaintiff did not speak with his employer regarding returning to work after his release from the hospital, or anytime thereafter.
12. On January 3, 1997, the plaintiff presented for his follow-up at the Outpatient Clinic, where he was examined by Dr. Scallion. The plaintiff complained of loss of balance, numbness, and popping joints. Physical examination found the plaintiff to have normal gait and a full range of motion in the left shoulder. The plaintiff demonstrated a left arm weakness for which Dr. Scallion ordered nerve conduction studies. However, the plaintiff did not return for that appointment.
13. The plaintiff retains no permanent partial impairment as a result of the alleged incident.
14. Based upon the plaintiff's demeanor and testimony at the hearing before the Deputy Commissioner, taken with the multitude of conflicting statements which he provided to medical personnel and in his recorded statement, and the conflicting evidence offered by all witnesses at the hearing, the greater weight of the competent, credible evidence in the record supports a finding that the plaintiff did not sustain an injury by accident arising out of and in the course and scope of his employment on December 19, 1996. Therefore, the plaintiff's allegations that he fell on December 19, 1996 were specifically rejected by the Deputy Commissioner and therefore are also rejected by the Full Commission as not being credible evidence.
15. There is no competent medical evidence in the record to prove by the greater weight that the plaintiff aggravated his pre-existing symptomatic neck and back conditions on or about December 19, 1996.
16. Plaintiff's pursuit of his claim for benefits was without reasonable grounds.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The plaintiff did not sustain an injury by accident arising out of and in the course of his employment on December 19, 1996. N.C. GEN. STAT. § 97-2(6).
2. The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony; it may accept or reject all or part of the testimony of a witness.Robbins v. Nicholson, 10 N.C. App. 421, 179 S.E.2d 183(1971). In the instant case, the plaintiff's testimony regarding the alleged fall from the beam on December 19, 1996 is specifically rejected as not being credible evidence.
3. Defendants are entitled to an award of attorney fees in the amount of $1,000.00 because plaintiff's actions were not based upon reasonable grounds. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Plaintiff shall pay a reasonable attorney fee in the amount of $1,000.00 to defense counsel as part of the cost of this action.
3. Each side shall pay its own costs.
This the ___ day of July 1998.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER